IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 28, 2025 Session[1]

## STATE OF TENNESSEE v. BILLY GENE SLIGER

**Appeal from the Circuit Court for Jefferson County**
**No. 14963     O. Duane Slone, Judge[2]**

_____

**No. E2024-00508-CCA-R3-CD**

_____

The Defendant, Billy Gene Sliger, appeals his convictions for two counts of rape of a child and one count of aggravated sexual battery. Specifically, he argues that (1) the evidence was insufficient to support his aggravated sexual battery conviction; (2) the trial court erred by interrupting jury deliberations to inform the jury of the court's schedule; (3) the State committed prosecutorial misconduct during voir dire, opening statement, and closing arguments; (4) the trial court erred by not requiring the State to elect an offense for count two charging rape of a child and instead giving a modified unanimity instruction; and (5) the trial court abused its discretion by ordering consecutive sentences. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TOM GREENHOLTZ, JJ., joined.

Mitchell A. Raines (on appeal), Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference, Franklin, Tennessee; Rebecca V. Lee (at trial), District Public Defender; and Cashauna Lattimore and Graeson McCaslin (at trial), Assistant District Public Defenders, Dandridge, Tennessee, for the appellant, Billy Gene Sliger.

---

[1] Oral argument in this case was heard at the University of Tennessee College of Law. This panel wishes to express its gratitude to the University and our court staff for their efforts in bringing this project to fruition, as well as to both the students and attorneys that were present.

[2] During the pendency of this appeal, the Honorable O. Duane Slone of the Fourth Judicial District passed away on August 25, 2024. We acknowledge his service to the State of Tennessee.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Jimmy B. Dunn, District Attorney General; and Jeremy D. Ball, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I.    FACTUAL AND PROCEDURAL HISTORY

This case arises from the Defendant's sexually abusing the victim—his biological granddaughter—on multiple occasions between June 16, 2018, and June 15, 2020. The Defendant was indicted for rape of a child in counts one and two and for aggravated sexual battery in count three.[3]  *See* Tenn. Code Ann. §§ 39-13-522, -504. On February 3, 2023, the Defendant moved the trial court to order the State to make an election for counts one and two of the charged offenses of rape of a child. No ruling by the trial court on this motion is included in the record.

The Defendant proceeded to a jury trial on April 27 and 28, 2023. During voir dire, the State commented to the prospective jurors that the present case was "very serious, quite frankly, as serious as it gets in the justice system." The State continued its questioning of the venire, and eventually, a jury was impaneled and sworn. The State then began its opening statement by noting, "[The victim] should be in school today. She's not. She's here. . . . It's too much for a kid of her age to have to do that." It then detailed the witnesses it intended to call and the evidence it expected to introduce during trial.

After the parties' opening statements, the victim took the stand, provided her birthdate, and said that she was fifteen years old at the time of trial. She identified the Defendant in court and said he was her grandfather. When she was eleven years old and attending school in Jefferson County, she moved in with the Defendant into his trailer in Jefferson County, along with her mother, older brother, and two younger brothers. Her stepfather eventually moved into the trailer as well. A drawing was entered showing the layout and location of the family's sleeping arrangements in the trailer. The victim's bedroom was at one end of the trailer, between her older brother's room and the living room, where the Defendant would sleep at times. The kitchen and the bedroom her mother and stepfather shared were on the opposite side of the trailer. Her younger siblings would sleep either in her older brother's room or her mother's room.

---

[3] The Defendant was also indicted for aggravated sexual battery in count four, but this charge was later dismissed.

The victim's relationship with the Defendant was "normal" at first, but, at times, the Defendant would request that the victim massage him and would give her money in exchange for the massages. During these massages, he would wear only his "tighty-whities" underwear and would, sometimes, have the victim use an oil-based "lube." The relationship shifted when the Defendant began making inappropriate comments about the victim's body, including saying that her breasts looked bigger. He also started massaging her in "sexual ways." She explained these massages would take place in her bedroom at night. The Defendant would come into her bedroom, start rubbing the victim's feet and legs, and move toward her "private areas," meaning her "butt" and "vagina." The Defendant would also attempt to massage the victim's breasts. However, the victim would position her arms in a way to protect her chest.

During these massages, the Defendant digitally penetrated the victim's vagina on three occasions. While massaging the victim, the Defendant placed his hand under her shorts and underwear and then inserted his finger into her vagina. The victim told the Defendant to stop, and he complied on each occasion. No one else was present during these instances.

The victim clarified a comment she had made to law enforcement about her bedroom lights being on during one of these massages. She explained that the first time the Defendant touched her "private areas," her bedroom lights were on, and she was wearing jeans, but the Defendant did not digitally penetrate her vagina. On this first occasion, she felt as though she could not tell the Defendant to stop, and she "let [the touching] happen." However, she explained that the three instances of penetration occurred when she was wearing shorts, and her bedroom lights were off. She reaffirmed the three instances of digital penetration occurred when she was eleven years old.

Another time, while the victim was alone in the living room, the Defendant had the victim's electric toothbrush, and the victim "felt him turn it on . . . [and] put it to [her] leg[.]" The victim explained that the Defendant placed the toothbrush over her clothes on the "middle . . . lower part" of her vagina. She told him to stop, and he did so. The victim affirmed that anyone could have walked in during this encounter.

The victim reaffirmed that all these incidents occurred while she was attending school in Jefferson County. While the Defendant never threatened her over disclosing the abuse, she was scared to tell her mother. However, the victim wanted to protect her younger siblings, so she disclosed the abuse to her cousin, K.E.[4] She asked K.E. if the

---

[4] We use initials to protect the identity of the witness.

Defendant's behavior was "normal," and K.E. stated it was not. The victim and K.E. then disclosed the abuse to K.E.'s mother.

K.E.'s mother affirmed that the victim was at her house during a weekend in July 2020. During this visit, K.E. and the victim informed her that the Defendant had "touched" the victim. K.E.'s mother asked the victim a few questions, as it appeared to be "kind of minor at first," but then the victim told her "a little more." K.E.'s mother said that while she did not spend much time with the victim, she noticed a change in the victim's behavior after the disclosure.

K.E.'s mother informed her own mother of the victim's disclosure, who then informed the victim's mother. The victim's mother testified that she addressed the allegations with the victim. The victim disclosed that the Defendant had touched her inappropriately and then cried in her mother's arms. The victim's mother reported the allegations to the Department of Children's Services and then to the Jefferson County Sheriff's Department ("JCSD"). While her mother described the victim as "sassy" and "strong willed," she said the victim became depressed and reclusive after her interview with law enforcement. The victim then began dressing modestly, lost interest in school, and did not want to attend her eighth-grade year.

While describing the family dynamics, the victim's mother explained it was normal for the Defendant to ask for massages from family members, offer money in exchange for the massages, and use lotion on his back during the massages. When the victim's mother had massaged the Defendant, he had acted appropriately, and while he may have removed his shirt, he never stripped down to his underwear.

Detective Richard Collins with the JCSD testified that he investigated the case. While the victim gave her statements regarding the abuse to a female officer, he spoke with the Defendant. The Defendant denied the allegations and said massages were common within his family. The Defendant explained that he would give his family members massages while wearing "tighty-whities" and would use lotion during these massages.

After the proof concluded and prior to closing arguments, the Defendant filed an objection to the proposed jury instructions based upon the State's election of an offense in count two. As to count one, the State elected the first instance of digital penetration. As to count two, the State elected "the alleged act of Child Rape, occurring at a time different than the first time that the [D]efendant inserted his fingers in the alleged victim's vagina." The Defendant contended that because the victim had referenced two additional instances of penetration beyond the first occurrence, the State must further narrow the jury's focus to a particular act as to protect the right to a unanimous jury verdict. The trial court

overruled the Defendant's objection, finding that the modified unanimity instruction was warranted as generic evidence had been presented for both acts covered by count two.

During its closing argument, the State detailed the evidence that had been presented at trial. In relevant part, the State additionally noted the long-lasting negative effects sexual abuse has on victims, the victim's courage in "sto[pping] the cycle" of abuse, the pervasiveness of sexual abuse in Jefferson County, and that "somebody" needed to "stand up" for the victim and hold the Defendant accountable.

The trial court gave the modified unanimity instruction to the jury for count two. It explained that the State had alleged more than one act constituting rape of a child for count two, and, to ensure a unanimous verdict, the State must have proved beyond a reasonable doubt the commission of "all of the acts described by the alleged victim in [c]ount two as occurring within the time period charged in count two of the indictment[.]" The jury was then instructed that statements by counsel were not evidence and to disregard any statements unsupported by the evidence. It further instructed the jurors not to surrender their "honest conviction as to the weight or effect of the evidence solely because of the opinion of [their] fellow jurors or for the mere purpose of returning a verdict."

At 11:21 a.m., the jury exited the courtroom to begin deliberations. At 4:08 p.m. the jury reentered the courtroom, and the following exchange occurred:

THE COURT: So let me ask you a question. So it's of course right at 4:15 and you all have been working really hard all day and especially deliberation process for almost five hours, whatever break you took. So we're going to go [until] five o'clock today, okay? Then if we don't have a unanimous verdict at that time, then we're going to break until 9:00 o'clock Monday morning. So I'm curious about where you are.

FOREPERSON: We're making progress.

THE COURT: Getting anywhere?

FOREPERSON: Yeah. I think we're close.

THE COURT: Everybody seems to agree with exhausted looks on your face. So we'll keep working till then or if you have a verdict before then, then of course you'll let the officers know and they'll let us know, but I just want to kind of get a gauge on where things were and let you know that we would be breaking at five. I mean, if you're ten minutes away from five o'clock, we

- 5 -

won't come back Monday morning obviously, but I mean, otherwise, that's where I'm going to stop today, okay? All right.

The jury exited the courtroom at 4:10 p.m. At 4:34 p.m., the jury reentered the courtroom and rendered its verdict, finding the Defendant guilty as charged.

A sentencing hearing was held on June 5, 2023. The State entered as exhibits certified copies of the Defendant's previous convictions for a DUI from 1990 and an indecent exposure from 1991.

As to enhancement factors, the trial court found the Defendant had criminal convictions in addition to those necessary to establish the appropriate range, noting the Defendant's two prior convictions. Tenn. Code Ann. § 40-35-114(1). However, due to the age of the convictions, it gave this factor "virtually no weight." It then found that the Defendant had abused a position of private trust in a manner that significantly facilitated the commission or the fulfillment of the offense. *Id.* § -114(14). It noted that due to the Defendant's being the victim's biological grandfather, the victim's mother had placed trust in the Defendant which he abused in the "most repulsive way." It placed "great weight" on this factor. The trial court further noted the mental and emotional anguish the victim had suffered. Additionally, the trial court found that the Defendant's criminal conduct neither caused nor threatened serious bodily injury. *Id.* § -113(1). The trial court gave this mitigating factor "little weight."

The trial court sentenced the Defendant to thirty-two years on each conviction for rape of a child and to ten years for his conviction for aggravated sexual battery. It ordered these sentences to run consecutively, stating that though it "underst[ood] [the Defendant's] age," a total effective sentence of seventy-four years was warranted based upon the need for "deterrence, not just to [the Defendant] but to the rest of the community."

On June 30, 2023, the Defendant filed a motion for new trial. A hearing was held on the motion on November 28, 2023, and the trial court's written order denying the motion was filed on March 27, 2024. This timely appeal followed.

## II.  ANALYSIS

### A.  Sufficiency of the Evidence

The Defendant argues that the evidence was insufficient to support his conviction for aggravated sexual battery because the State failed to prove that the Defendant's conduct of holding an electric toothbrush to the victim's vagina was for the purpose of sexual

gratification. To this point, he asserts that the touching alone cannot support the conviction and that proof beyond the touching is required to show it was for sexual gratification. The State counters that a rational trier of fact could have reasonably construed holding an electric toothbrush to the victim's vagina was for the Defendant's sexual gratification.

The United States Constitution prohibits the states from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. A state shall not deprive a criminal defendant of his liberty "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In determining whether a state has met this burden following a finding of guilt, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, the defendant has the burden on appeal of illustrating why the evidence is insufficient to support the jury's verdict. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). If a convicted defendant makes this showing, the finding of guilt shall be set aside. Tenn. R. App. P. 13(e).

"Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Appellate courts do not "reweigh or reevaluate the evidence." *Id*. (citing *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978)). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Therefore, on appellate review, "the State is entitled to the strongest legitimate view of the trial evidence and all reasonable or legitimate inferences which may be drawn therefrom." *Cabbage*, 571 S.W.2d at 835.

As relevant to this appeal, aggravated sexual battery includes "unlawful sexual contact with a victim by the defendant or the defendant by a victim . . . [when t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4). "Sexual contact includes . . . the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]" *Id.* § -501(6). Intimate parts include "the primary genital area, groin, inner thigh, buttock or breast of a human being[.]" *Id.* § -501(2).

Whether a defendant's touching of a victim was for the purpose of sexual gratification is a question for the jury. *See, e.g.*, *State v. Reed*, No. W2022-01072-CCA-

- 7 -

R3-CD, 2023 WL 6440156, at *3 (Tenn. Crim. App. Oct. 3, 2023), *perm. app. denied* (Tenn. Mar. 6, 2024); *State v. Walden*, No. M2014-01337-CCA-R3-CD, 2015 WL 2257130, at *3 (Tenn. Crim. App. May 12, 2015).  As intent in sexual battery cases is "almost always" proven by circumstantial evidence, *see State v. Hayes*, 899 S.W.2d 175, 180 (Tenn. Crim. App. 1995), "the jury may infer intent from [a] defendant's acts."  *State v. Johnson*, No. W2011-01786-CCA-R3CD, 2013 WL 501779, at *10 (Tenn. Crim. App. Feb. 7, 2013) (citing *State v. Leach,* 148 S.W.3d 42, 54 (Tenn. 2004)).  Further, jurors may "use their common knowledge and experience in making reasonable inferences from evidence[.]" *State v. Meeks*, 876 S.W.2d 121, 131 (Tenn. Crim. App. 1993).  Importantly, our legislature has not required that a defendant become sexually aroused or gratified by the touching but only that such touching may be "reasonably construed as being for the purpose of sexual arousal or gratification."  Tenn. Code Ann. § 39-13-501(6); *see, e.g.*, *Walton*, 2015 WL 2257130, at *3; *State v. Chisenhall*, No. M2003-00956-CCA-R3-CD, 2004 WL 1217118, at *3 (Tenn. Crim. App. June 3, 2004).  Additionally, a minor's testimony regarding sexual contact is sufficient to support a conviction for a sexual offense. *State v. Elkins*, 102 S.W.3d 578, 582-83 (Tenn. 2003).

Here, contrary to the Defendant's argument, his conviction was not based solely on the touching of the victim's vagina with no additional circumstances.  Rather, the record shows that he took the victim's electric toothbrush into the living room where the victim was alone, activated the toothbrush, and placed it over the victim's clothes on the "middle . . . lower part" of her vagina.  The Defendant ceased this conduct only when the victim told him to stop.  As such, a rational trier of fact could reasonably construe the Defendant's touching of the victim's vagina with a vibrating object was for the purpose of sexual gratification.  *See, e.g.*, *Reed*, 2023 WL 6440156, at *4 (holding that the evidence of the victim's awakening to find the defendant touching her vagina was sufficient for a rational juror to reasonably construe such conduct as being for sexual gratification); *State v. Stegall*, No. W2022-00628-CCA-R3-CD, 2023 WL 6319610, at *9 (Tenn. Crim. App. July 14, 2023) (holding that the evidence of the defendant's touching and rubbing the victim's vaginal area was sufficient for a jury to reasonably construe such conduct was for sexual gratification); *State v. Stewart*, No. E2017-00864-CCA-R3-CD, 2018 WL 287178, at *6-7 (Tenn. Crim. App. Jan. 4, 2018) (holding that the defendant's touching the victim's vagina over her clothes could have been reasonably construed by the jury as being for sexual arousal or gratification).  The Defendant is not entitled to relief on this issue.

## B.    Courtroom Schedule

The Defendant argues that the trial court's comments to the jury on a Friday afternoon explaining that deliberations would end for the day in less than one hour constitutes reversible error.  Specifically, he argues that this communication imposed a

"hard deadline" and placed "undue pressure on the jury" to render a unanimous verdict on all charges before adjourning for the weekend. In support of his claim, the Defendant relies on case law addressing instructions given to deadlocked juries. While the Defendant acknowledges in his brief that this case did not involve a deadlocked jury, he nevertheless contends that the principles governing such circumstances are applicable in this case.

The State counters that this argument has been waived due to the Defendant's failure to contemporaneously object, regardless of the Defendant's raising this issue in his motion for new trial. The State further contends that plain error relief is not warranted, as no clear and unequivocal rule of law was breached, no substantial right was adversely affected, and substantial justice does not require consideration of the error. In his reply brief, the Defendant responds that the State has waived its waiver argument for failing to raise it during the motion for new trial proceedings and, alternatively, that the plain error factors are met.

As to both waiver arguments, we agree that a party is cautioned against changing theories on appeal. *See Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983) (providing that it "has long been the general rule that questions not raised in the trial court will not be entertained on appeal"); *State v. Dobbins*, 754 S.W.2d 637, 641 (Tenn. Crim. App. 1988) (stating it is "elementary that a party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason in this Court."). This principle serves to confine both the Defendant and the State to the arguments presented in support of the issues raised in the lower court. Nonetheless, when an issue has not been properly preserved, this court is generally limited to a plain error review of the issue. *See State v. Bristol*, 654 S.W.3d 917, 925-27 (Tenn. 2022) (explaining that this court's jurisdiction is "appellate only"). As the record reflects that the Defendant failed to contemporaneously object to the trial court's comments about the courtroom's schedule, he is entitled to relief only under the plain error doctrine, regardless of the State's failure to raise the issue at the motion for new trial hearing. *See State v. Wakefield*, No. M2005-01136-CCA-R3-CD, 2006 WL 1816323, at *15 (Tenn. Crim. App. June 29, 2006) (holding the defendant's failure to object to the trial court's comments regarding the courtroom schedule waived plenary review of the issue); *see also* Tenn. R. App. P. 36(a); *cf. State v. Walls*, 537 S.W.3d 892, 899-900 (Tenn. 2017) (concluding the defendant failed to preserve an issue regarding jury deliberations by failing to contemporaneously object to the procedure utilized by the trial court and addressing the issue only at the hearing on the motion for new trial). We will focus our analysis accordingly.

In conducting plain error review, our court will reverse for plain error only if the five following prerequisites are satisfied:

(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must be present in the record before an appellate court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one factor cannot be established. *Id*. at 283. In order to warrant plain error relief, the magnitude of the error must have been so significant "that it probably changed the outcome of the trial." *Adkisson*, 899 S.W.2d at 642 (quoting *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir. 1988)). Plain error relief should be "sparingly exercised[,]" *see State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007), and is only appropriate for errors that are "especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding," *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006). A defendant has the burden of persuading the appellate court that plain error exists. *Bledsoe*, 226 S.W.3d at 355.

Here, we conclude that no clear and unequivocal rule of law was breached. The Defendant's argument takes issue with the trial court's communicating the courtroom's schedule to the jury less than one hour before the courtroom closed on a Friday afternoon as a method of placing undue pressure on the jury to reach a unanimous verdict. Thus, the crux of his argument appears to be the timing of the communication. However, no clear and unequivocal rule of law establishes the process or timing in which a trial court must perform such practical functions. Courtrooms are not twenty-four-hour establishments, and the practical aspects of managing courtroom proceedings have generally been left to the discretion of the trial court. *Cf. Walls*, 537 S.W.3d at 904-05 (concluding that a trial court's decision to allow late-night jury deliberations is a discretionary function). Accordingly, the trial court breached no clear and unequivocal rule of law by informing the jury that the court would be finishing for the day by a certain time.

Additionally, we conclude no substantial right of the Defendant's was adversely affected and consideration of the error is not necessary to do substantial justice. To this point, we cannot agree that the trial court's comments forced the jury to return a hurried verdict. Rather, it appears the trial court let the jury deliberate uninterrupted for as long as possible until, out of necessity, it let the jurors know the court's schedule. While such communications should be handled delicately, the trial court's comments here were not directed toward the jurors in the minority, did not urge such jurors to abandon their honestly

held convictions, and did not impose a deadline for returning a verdict. *See State v. Baxter*, 938 S.W.2d 697, 704 (Tenn. Crim. App. 1996) (citing *State v. Dick*, 872 S.W.2d 938, 946 (Tenn. Crim. App. 1993)) (holding the trial court's instructions to a deadlocked jury were not an undue intrusion into the province of the jury when the comments did not impose a deadline for a verdict and did not coerce jurors in the minority to cede their views).

In fact, contrary to imposing a deadline, the trial court acknowledged that it would allow the jury to continue working within ten minutes of the closure, but it explained that if the jury did not reach a verdict that evening, deliberations would resume the following Monday at 9:00 a.m. *See State v. Avant*, No. W2018-01154-CCA-R3-CD, 2019 WL 3072131, at *9 (Tenn. Crim. App. July 12, 2019) (finding no plain error when trial court "explained candidly" to the jury that the court would be closed on Sunday and Monday and that, if a verdict was not rendered, deliberations would resume on the following Tuesday); *Wakefield*, 2006 WL 1816323, at *14-15 (finding no plain error when the trial court informed the jury at 5:49 p.m. on a Friday that if it did not reach a verdict, it would have to return the following Monday for deliberations, and twenty-six minutes later, the jury returned a verdict of guilty). The jurors were also instructed not to surrender their honest convictions for that of other jurors or for the mere purpose of returning a verdict. We presume the jury followed the trial court's instructions. *State v. Banks*, 271 S.W.3d 90, 137 (Tenn. 2008). Furthermore, all twelve jurors affirmatively raised their hands when polled as to whether the verdicts rendered were their unanimous decision. As such, the Defendant is not entitled to relief on this issue.

### C. Prosecutorial Misconduct

The Defendant contends he is entitled to plain error relief based on the prosecutor's statements during voir dire, opening statement, and closing arguments. Specifically, he argues these statements broadened the issues beyond that of guilt or innocence and inflamed the passions of the jury by placing undue significance on the importance of the case, the effect on the victim beyond the elements of the offenses, the heroism displayed by the victim for reporting the offenses, and the pervasiveness of child sex abuse within the community. The State responds that the statements were permissible as they were not so inflammatory or improper as to affect the verdict.

When an argument is found to be improper, the established test for determining whether there is reversible error is whether the misconduct was so improper or the argument so inflammatory that it affected the verdict to a defendant's detriment. *Harrington v. State*, 385 S.W.2d 758, 759 (Tenn. 1965). This court has recognized five general areas of improper argument by the State:

(1)     intentionally misstating the evidence or misleading the jury as to the inferences it may draw;

(2)     expressing a personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant;

(3)     making an argument calculated to inflame the passions or prejudices of the jury;

(4)     making an argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict; and

(5)     intentionally referring to or arguing facts outside the record unless the facts are matters of common public knowledge.

*State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003) (internal citations omitted).  In measuring the prejudicial impact of any misconduct, this court should consider: (1) the facts and circumstances of the case, (2) any curative measures undertaken by the court and the prosecutor, (3) the intent of the prosecution, (4) the cumulative effect of the improper conduct and any other errors in the record, and (5) the relative strength or weakness of the case. *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976); *see also State v. Buck*, 670 S.W.2d 600, 609 (Tenn. 1984).

The Defendant acknowledges that no contemporaneous objection was lodged against any of the challenged comments and that he is entitled to relief only under plain error review.  *See State v. Enix*, 653 S.W.3d 692, 701 (Tenn. 2022) (reviewing arguments the prosecutor made to the jury when the defendant failed to contemporaneously object only for plain error); Tenn. R. App. P. 36(a).  Therefore, our review will be guided by the plain error doctrine detailed above.

1.      Voir Dire

The Defendant argues that the State first made an improper comment to the potential jurors during voir dire when it phrased the nature of the case as "very serious, quite frankly, as serious as it gets in the justice system."  The State argues this comment was not improper because the State's describing to prospective jurors the nature of the case, which involved felony offenses, was not prohibited by law, did not broaden the issues beyond the guilt or innocence of the Defendant nor inflame the passions of the jury.

- 12 -

The purpose of voir dire is to advise both parties of the potential jurors' qualifications, interests, or biases so as to enable the exercise of peremptory challenges. *Smith v. State*, 327 S.W.2d 308, 318 (Tenn. 1959). The process is designed to ensure jurors are competent and impartial. *State v. Cazes*, 875 S.W.2d 253, 262 (Tenn. 1994). Parties are permitted to "make brief, non-argumentative remarks that inform the potential jurors of the general nature of the case." Tenn. R. Crim. P. 24(a)(2).

Here, the Defendant was charged with Class A and Class B felony offenses. Such felony classifications charge many of the most heinous offenses in our society and carry some of the most severe sentences. The Defendant has cited no law stating that parties are precluded from informing potential jurors of the general nature or character of the case they may be called upon to decide. *See* Tenn. R. Crim. P. 24(a)(2); *cf. State v. Dotson*, No. W2017-01099-CCA-R3-CD, 2018 WL 2175696, at *7 (Tenn. Crim. App. May 10, 2018) (holding plain error was not established when the defendant failed to provide law supporting his claim of prosecutorial misconduct for improper comments made to a jury). Accordingly, the Defendant has failed to establish that the prosecutor violated any clear and unequivocal law by characterizing the case as "serious."

Additionally, after reviewing the prosecutor's comments in context, we cannot say that the prosecutor used this characterization for an improper purpose. Rather, the prosecutor used it to introduce the potential jurors to the sensitive topics involved in the case. As such, the Defendant also failed to establish how the prosecutor's characterization adversely affected a substantial right. *Adkisson*, 899 S.W.2d at 641-42; *see also State v. Robinson*, 146 S.W.3d 469, 520 (Tenn. 2004) (appendix) (noting prosecutor's statement during voir dire regarding the victim's being the "other person involved in this process" was not improper because the statement was "minuscule compared to the lengthy voir dire" and there was no indication the comment was intended to provoke the jury). Therefore, the Defendant has not established any plain error with respect to this statement during voir dire.

### 2.    Opening Statement

The Defendant next contends that the State committed prosecutorial misconduct during its opening statement when it stated, "[The victim] should be in school today. She's not. She's here. . . . It's too much for a kid of her age to have to do that." The State responds that these comments referenced evidence that would be established at trial, and therefore, were not improper because they did not broaden the issues beyond the guilt or innocence of the Defendant or inflame the passions of the jury.

Tennessee Code Annotated section 20-9-301 gives all parties the right to make an opening statement to the court and jury "setting forth their respective contentions, views of the facts and theories of the lawsuit." Such statements allow the parties to give a general overview of the nature of the case and to outline the facts each party intends to prove. *State v. Sexton*, 368 S.W.3d 371, 415 (Tenn. 2012). Generally, "presentation of a summary of the facts supportive of the respective theories of the case" is permitted if such facts are "deemed likely to be supported by admissible evidence." *Id.* (quoting *Stanfield v. Neblett,* 339 S.W.3d 22, 41-42 (Tenn. Ct. App. 2010)). "No reference should be made to facts and circumstances which are not admissible in evidence." *Id.*

We cannot agree that noting the victim was school-aged and would otherwise be in school was improper. As this was a child sex abuse case, the evidence at trial established the victim's birthdate and that she was fifteen years old at the time of trial. As such, a juror would likely understand that the victim, as a school-aged child, would be in school on a weekday in April if not for testifying in court. Therefore, no clear law was breached, no substantial right was adversely affected, and consideration of the issue is not necessary to do substantial justice. *Adkisson,* 899 S.W.2d at 641-42.

However, we conclude that the prosecutor's comment that this was "too much" for a child of the victim's age was imprudent. While part of the theory of the State's case was to show the effect the abuse had on the victim, a comment regarding the general emotional or mental threshold of a child of a certain age was outside the facts that would be presented and was likely intended to inflame the passion of the jury. However, because we must consider the cumulative effect of any improper arguments, and observe additional error as discussed below, we will address this further in the subsection that follows. *See Goltz*, 111 S.W.3d at 5-6.

### 3. Closing Arguments

The Defendant argues that the State committed prosecutorial misconduct by making the italicized statements below during its closing argument:

> It's uncomfortable to talk about this, folks, it is, *but that's no excuse to pretend like it doesn't happen*. It does happen[] and it happens to real people like [the victim]. *It wrecks lives. It sends people into depression, into therapy*. It affects how they understand intimacy for the rest of their life and *it robs them, particularly children, it robs them of their innocence. It needs to stop. And when does it stop? It stops when someone like [the victim] courageously stands up and says, no, this is not right*. But she was willing to endure it when it was just her, quietly, painfully, keep it all inside. But

she realized when she was going to have younger siblings, that *somebody had to stand up and stop that cycle, and thank goodness she had the courage to do that. So she stood up for those kids. Well, [the victim] needs somebody to stand up for her. And somebody has to stand up to [the Defendant] and hold him accountable.*

Child sex abuse happens. It's real. *It happens here in Jefferson County just like everywhere else and nobody benefits when we pretend that it doesn't happen.* One of her heartbreaking questions when she reported this to one of her friends, she asked, ["]Is this normal?["] Pretty tough to hear that from an 11 year old girl; "Is this normal?" But it's a fair question, isn't it? *Happens every day.* "Is it normal?" *Are we going to look the other way or are we going to pretend it doesn't because it's uncomfortable to talk about,* or are we going to look at the law and the facts and apply the testimony that you heard to the law in this case and based on the proof that you heard from the witness stand?

The State responds that these comments were not improper for several reasons. First, the State asserts that these comments were established by the evidence as they related to the victim's testimony regarding the mental anguish she suffered as a result of the abuse and how she was initially scared to come forward. Second, the State argues that these comments constituted only a "forceful argument" from the State, and as such, no clear and unequivocal rule of law was breached. Third, it notes that these comments did not interject into the proceeding issues beyond the guilt or innocence of the Defendant because the State told the jurors to look at the facts and law to render a guilty verdict. Lastly, the State contends that substantial justice does not require consideration of the error because the proof sufficiently established the Defendant's guilt.

Criminal convictions should not be lightly overturned based solely on the prosecutor's closing argument. *Banks*, 271 S.W.3d at 131. Closing arguments are intended "to sharpen and to clarify the issues that must be resolved in a criminal case." *Id.* at 130 (citing *Herring v. New York*, 422 U.S. 853, 862 (1975)). Our supreme court has observed that "argument of counsel is a valuable privilege that should not be unduly restricted." *Smith v. State*, 527 S.W.2d 737, 739 (Tenn. 1975). In closing arguments, each side should "present their theory of the case and to point out the strengths and weaknesses in the evidence to the jury." *Banks*, 271 S.W.3d at 130 (first citing *Christian v. State*, 555 S.W.2d 863, 866 (Tenn. 1977); and then citing 11 David L. Raybin, *Tennessee Practice: Criminal Practice and Procedure* § 29.01, at 72 (1985)).

Although both prosecution and defense counsel in criminal cases are expected to be zealous advocates, "prosecutors must not lose sight of their duty to seek justice impartially[.]" *State v. Hawkins*, 519 S.W.3d 1, 47 (Tenn. 2017) (citing *Banks*, 271 S.W.3d at 131), *overruled on other grounds by Enix*, 653 S.W.3d at 700-01. "Closing arguments in criminal cases have a 'rough and tumble quality' about them . . . because they are traditionally the one place in the trial where the lawyers are given the greatest leeway in their manner of expression." *Banks*, 271 S.W.3d at 131 (first quoting *State v. Skakel*, 888 A.2d 985, 1060-61 (Conn. 2006); and then citing 6 Wayne R. LaFave et al., *Criminal Procedure* § 24.7(b), at 456-57 (3d ed. 2007)). "[P]rosecutors, no less than defense counsel, may use colorful and forceful language in their closing arguments, as long as they do not stray from the evidence and the reasonable inferences to be drawn from the evidence . . . or make derogatory remarks or appeal to the jurors' prejudices[.]" *Id.* (first citing *United States v. Mullins*, 446 F.3d 750, 759 (8th Cir. 2006); and then citing *State v. Reid*, 164 S.W.3d 286, 320-21 (Tenn. 2005)).

We conclude the prosecutor's remarks during closing arguments were improper. While arguments concerning deterrence and appeals to the jury to act as "the community conscience" are not necessarily impermissible, counsel should exercise caution when commenting on the jury's interest in the community. *State v. Pulliam*, 950 S.W.2d 360, 368 (Tenn. Crim. App. 1996); *State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1998). The pervasiveness of child sex crimes in the Jefferson County community, the emotional effects of such crimes, and the victim's bravery for reporting such crimes are facts outside the record and "exceed[] mere allusions to society's need to convict guilty people or a general appeal to the jury's sense of community[.]" *Pulliam*, 950 S.W.2d at 368. Such arguments were likely intended to invoke sympathy for the victim and inflame the passions of the jury. *See Goltz*, 111 S.W.3d at 9 (finding reversible error when the recurring theme throughout the prosecutor's closing argument focused upon the need for the jury to "save the community" and not upon the evidence of the case); *Cauthern*, 967 S.W.2d at 737 (holding improper the prosecutor's comments to the jury to "do its duty" to send a message to the community); *State v. Watkins*, No. M2017-01600-CCA-R3-CD, 2019 WL 1370970, at *14 (Tenn. Crim. App. Mar. 26, 2019) (finding the prosecutor's comments regarding the number of women in the United States who fail to report rape and their reasons for doing so were facts outside the record, inflammatory, and broader than the issue of guilt or innocence).

However, while we conclude these comments along with the comment during opening statement were improper, we disagree that the cumulative effect of such statements distracted and inflamed the jury's passions to the point that the verdict was affected. Reviewing both the State's opening statement and closing arguments in their entirety shows that their general themes pertained to the evidence the State intended to and did

introduce at trial. Such evidence sufficiently established that the Defendant repeatedly sexually abused the victim while she lived with him, that she disclosed this abuse to multiple people, and that she became withdrawn, depressed, and disinterested in school as a result. Additionally, immediately following the challenged comments in the State's closing arguments, the State told the jury to "look at the law and the facts and apply the testimony that you heard to the law in this case[.]" Such comments show that the State was encouraging the jurors to decide the case on the facts and the law and not for improper reasons. *See State v. Chandler*, No. M2013-00279-CCA-R3CD, 2014 WL 3055972, at *21 (Tenn. Crim. App. July 7, 2014) (finding no error regarding the State's comments that broadly referenced societal obligations to minors but then narrowed to encourage the jury to convict the defendant only if they believed the victim's testimony).

Furthermore, the trial court later instructed the jury that statements made by counsel were not evidence and that the jury was to disregard any statements not supported by the evidence. Again, jurors are presumed to follow the court's instructions. *Banks*, 271 S.W.3d at 137. Thus, in light of the evidence at trial and the context in which these comments were delivered, we cannot agree they were so improper or inflammatory as to have affected the verdict. *See Reid*, 164 S.W.3d at 344. As such, the Defendant has failed to show that a substantial right was adversely affected or that consideration of the error is necessary to do substantial justice. *State v. Armstrong*, 256 S.W.3d 243, 250 (Tenn. Crim. App. 2008); *Page*, 184 S.W.3d at 230.

### D.    Modified Unanimity Instruction

The Defendant contends that the trial court erred by giving a modified unanimity instruction for rape of a child charged in count two rather than requiring the State to provide an election. To this point, he argues the circumstances of this case did not warrant the instruction because it did not involve a "young child" incapable of recalling a "magnitude" of sexual abuse that occurred over an extended period of time. Additionally, he asserts that the instruction was given in error because the State chose not to elicit further testimony from the victim to make possible a specific election and that the failure to provide an election created a "grab-bag" theory of justice, calling jury unanimity into question. The State responds that the circumstances in this case warranted the modified unanimity instruction, the Defendant's argument regarding the State's failure to elicit more testimony is merely speculative, and the modified unanimity instruction protected the Defendant's right to a unanimous jury verdict.

The right to a unanimous jury verdict is included in a criminal defendant's right to a trial by jury and is protected by the United States and Tennessee Constitutions. U.S. Const. amend. VI, XIV; Tenn. Const. art. I, § 6; *see Ramos v. Louisiana*, 590 U.S. 83, 92

(2020); *State v. Kendrick*, 38 S.W.3d 566, 568 (Tenn. 2001). To protect the fundamental right to a unanimous jury verdict, the election doctrine was developed so that jurors would unanimously agree on the particular conduct the defendant committed when rendering its verdict. *State v. Qualls*, 482 S.W.3d 1, 9 (Tenn. 2016).

Generally, juror unanimity is readily satisfied because evidence that a defendant has committed other crimes "wholly independent of that for which he is charged, even though it is a crime of the same character" is excluded as irrelevant. *State v. Rickman*, 876 S.W.2d 824, 827 (Tenn. 1994) (quoting *Bunch v. State*, 605 S.W.2d 227, 229 (Tenn. 1980)). However, in cases involving sexual offenses against children, the general prohibition against the admissibility of prior acts evidence is relaxed. *Qualls*, 482 S.W.3 at 9. Where an indictment charges that sex crimes have occurred over a period of time rather than on a specific date, evidence of other sexual crimes allegedly committed by the defendant against the victim during the time period charged in the indictment is admissible. *Id.* (citing *Rickman,* 876 S.W.2d at 828).

When the number of incidents introduced at trial exceeds the number of offenses charged, the election doctrine requires the State to identify the act it is relying upon to obtain a guilty verdict for each count. *Qualls*, 482 S.W.3d at 9-10; *State v. Johnson*, 53 S.W.3d 628, 631 (Tenn. 2001); *Rickman*, 876 S.W.2d at 828. The election requirement assists the defendant in preparing and defending against specific charges, protects the defendant against double jeopardy concerns, permits the trial court to review the weight of the evidence in its role as thirteenth juror, enables appellate courts to review the sufficiency of the evidence, and, most significantly, ensures jurors deliberate over and render a verdict based on the same offense. *Qualls*, 482 S.W.3d at 10 (citing *State v. Brown*, 992 S.W.2d 389, 391 (Tenn. 1999)).

Despite its importance in ensuring juror unanimity, strict application of the election requirement presents "practical difficulties" in child sex abuse cases where child victims are frequently "unable to identify the dates on which particular acts were perpetrated." *Qualls*, 482 S.W.3d at 9-10 (quoting *Rickman*, 876 S.W.2d at 828). In addressing such difficulties, our supreme court recognized that there is no right to a perfect election and that the election requirement may be satisfied in various ways. *Id.* at 10. To this point, the court explained that "any description" that identified the prosecuted offenses for the jury was sufficient, including narrowing the multiple incidents by asking the victim to identity the type of abuse perpetrated, specifying the unique circumstances around the incident, identifying the month an incident occurred, or referencing the incident with a meaningful event. *Id.* (first citing *State v. Knowles*, 470 S.W.3d 416, 424 (Tenn. 2015); then citing *State v. Walton*, 958 S.W.2d 724, 727 (Tenn. 1997); and then citing *State v. Shelton*, 851 S.W.2d 134, 138 (Tenn. 1993)). Requiring no single means of making an election allows

the State some latitude when prosecuting child sex crimes while also preserving a criminal defendant's right to a unanimous jury verdict. *Id.*; *Rickman,* 876 S.W.2d at 828.

In *State v. Qualls*, our supreme court addressed the "more complicated fact situation" where testimony adduced at trial detailed multiple instances of a similar type of abuse, but the victim could not or did not specifically differentiate the incidents, and there were fewer counts in the indictment than there were incidents identified in the victim's testimony. 482 S.W.3d at 11. The court explained that such evidence describing a pattern of abuse over a period of time rather than identifying specific incidents of abuse constituted "generic evidence" and was often the only proof available in severe child sexual abuse cases involving resident molesters who abuse their victims for years. *Id.* at 12; *see also People v. Jones*, 792 P.2d 643, 648 (Cal. 1990).

The *Qualls* court noted that the California Supreme Court's holding in *Jones* provided that generic evidence could satisfy the election requirement and protect a defendant's right to a unanimous jury verdict. *Id.* at 12-13 (citing *Jones*, 792 P.2d at 655). To do so,

> the victim's generic testimony must (1) describe "*the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct . . . ["]; (2) identify "the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping')"; and (3) designate "*the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us') to assure the acts were committed within the applicable limitation period."

*Qualls*, 482 S.W.3d at 13 (quoting *Jones*, 792 P.2d at 655). While additional details regarding the time, place, or circumstance of the various incidents "may assist in assessing the credibility or substantiality of the victim's testimony, such details 'are not essential to sustain a conviction.'" *Id.* (quoting *Jones*, 792 P.2d at 656).

The *Qualls* court observed that strict application of the election requirement in generic evidence cases would effectively insulate from prosecution the most egregious child molesters, except for those offenders who happened to select victims with better memories. *Qualls*, 482 S.W.3d at 15-16 (citations omitted). To remedy such an outcome, the court adopted the approach outlined in *Jones*, which permitted a trial court to issue a modified unanimity instruction in generic evidence cases. *Id.* The modified unanimity

instruction would satisfy the election requirement by allowing a conviction "only if the jury unanimously agree[d] the defendant committed all the acts described by the victim." *Id.* at 17. The *Qualls* court limited its holding to cases involving only generic evidence and reserved comment on how the election doctrine may be satisfied in cases involving both generic and specific evidence. *Id.* at 16 & n.14.

Consistent with traditional election rules, the State has a duty to make sufficient elections for each charged offense including requesting a modified unanimity instruction in generic evidence cases. *See Qualls*, 482 S.W.3d at 9-10, 16-17. The trial court also has a duty, without request from the parties, to ensure that the jury is properly instructed on the law governing the issues raised by the proceedings and the evidence introduced at trial. *State v. Hawkins*, 406 S.W.3d 121, 129 (Tenn. 2013). As such, at the conclusion of the State's case-in-chief, the trial court must determine whether the proof is "sufficiently specific as to apply the strict election requirement or whether the election requirement may be satisfied by giving the modified unanimity instruction." *Qualls*, 482 S.W.3d at 17 (citing *Knowles,* 470 S.W.3d at 423). When properly preserved, we review issues of whether the election requirement has been satisfied under a de novo standard of review. *Id.* at 8 (citing *State v. Clark*, 452 S.W.3d 268, 295 (Tenn. 2014)).

Here, the Defendant takes issue with the fact that the modified unanimity instruction was given because the victim was not a "young child" incapable of recalling distinct circumstances surrounding the latter two instances of digital penetration. However, the victim testified to several forms of abuse being perpetrated against her and, from this, could only recall the Defendant digitally penetrating her three times. We do not agree that a victim's age should necessarily determine what the victim could—or should—remember regarding the sexual abuse. While the victim was fifteen years old at trial, she was recalling events that occurred years prior when she was eleven years old. The *Qualls* court—in a case involving victims between thirteen and eighteen years of age—noted that young victims may have no practical way of identifying incidents of abuse by specific incidents or dates and that even "a mature victim might understandably be hard pressed to separate particular incidents of repetitive molestations by time, place or circumstance." *Qualls*, 482 S.W.3d at 8, 12 (quoting *Jones*, 792 P.2d at 648). To presume that the victim here should have remembered more due to her age would be to give effect to the concern in *Qualls* that child molesters would be insulated from prosecution, save those who selected victims with better memories.

To this point, the Defendant argues that the State simply chose not to elicit further testimony from the victim for an election in count two. However, nothing in the record indicates that the victim could recall these assaults with more specificity. *See Qualls*, 482 S.W.3d at 16 n.15 (noting that while specific evidence is "always preferable[,]" the

supreme court had "no way of knowing whether the victims could have provided additional details, and the prosecution may have known that the victims were incapable of providing such testimony"). In fact, the record reflects multiple instances of the victim repeatedly explaining and clarifying that the digital penetration happened in her bedroom when the lights were off, while she was wearing shorts, and when she was eleven years old and in school in Jefferson County. Furthermore, although the Defendant points to instances of the victim's detailed testimony involving other acts of sexual abuse—*e.g.*, pushing her arms together so the Defendant could not touch her chest and the Defendant's wearing "tighty-whities"—it is equally possible that these other instances show that the victim would have provided more detail regarding the digital penetrations had she been able to recall such instances with more specificity.

Moreover, our supreme court has not required a specific number of molestations to have occurred over a certain time period to warrant the giving of the modified unanimity instruction. However, the *Qualls* court included an example of a circumstance similar to the instant case while discussing adopting the modified unanimity instruction in generic evidence cases. The court explained,

> Where a defendant is charged with two sexual offenses during a particular period, but
>
> > the child victim testified that such conduct took place *three times* during that same period, and the jury believed that testimony in toto, its difficulty in differentiating between the various acts should not preclude a conviction of the two counts charged, so long as there is no possibility of jury disagreement regarding the defendant's commission of any of these acts.

*Qualls*, 482 S.W.3d at 14 (quoting *Jones*, 792 P.2d at 658).

In summation, this case involved multiple acts of digital penetration that exceeded the number of acts of rape of a child alleged in count two. For count two, the victim provided generic testimony that the Defendant entered her bedroom when she was eleven years old, initiated physical contact by massaging her legs, moved toward her "private areas," put his hand under her shorts and underwear, and placed his finger inside her vagina on two occasions. *See Qualls,* 482 S.W.3d at 13 (explaining that the *Jones* court required the victim's generic testimony to describe with sufficient specificity the kind of acts committed, the number of acts committed, and the general time period in which the acts were committed to allow a jury to determine guilt beyond a reasonable doubt). We

- 21 -

conclude that the circumstances of this case warranted the modified unanimity instruction for count two.

Lastly, we disagree that the giving of a modified unanimity instruction allowed the jury to "reach into the brimming bag of offenses," *see Tidwell v. State*, 922 S.W.2d 497, 501 (Tenn. 1996), and pull one out for count two. In *Tidwell*, our supreme court, in a post-conviction setting, addressed its concern about this "grab-bag" theory of justice and a defendant's right to a unanimous verdict when the jury had no apparent means to match specific conduct to a specific count or to differentiate among various counts of the same offense. *Id*. at 499-501. The *Tidwell* court explained that a defendant's right to a unanimous verdict required the trial court to take precautions to ensure that the jury deliberated over the same charged offense and that the trial court in the case should have required an election to ensure unanimity. *Id*. at 501-02. Otherwise, in "any given case the State could present proof on as many offenses within the alleged period as it chose. . . [and] the jury [could], in effect, reach into the brimming bag of offenses and pull out one for each count." *Id.* at 501. In such cases, a trial court could not be certain which evidence was matched by the jury to which count and, absent an election, an appellate court reviewing the legal sufficiency of the evidence could not be confident that it has discharged its function properly. *Id.*

However, the *Qualls* court specifically addressed the "grab-bag" concern discussed in *Tidwell*. The *Qualls* court explained that the modified unanimity instruction avoided such problems with juror unanimity because the instruction required the jury to unanimously agree that the defendant committed *all* the acts described by the victim. *See Qualls*, 482 S.W.3d at 16. The jury in this case was given the modified unanimity instruction in count two and, as juries are presumed to follow the trial court's instructions, *see Banks*, 271 S.W.3d at 137, a unanimous decision was therefore assured.

### E.     Consecutive Sentences

The Defendant challenges the consecutive alignment of his sentences, arguing that the trial court failed to articulate any of the grounds provided in Tennessee Code Annotated section 40-35-115(b) to support its decision. He further contends that the trial court failed to explain how the seventy-four-year sentence imposed on the then sixty-three-year-old Defendant was no greater than that deserved for the offenses committed and was the least severe measure necessary to achieve the purpose for which the sentence was imposed. The State concedes that the trial court failed to place adequate reasoning on the record but nonetheless argues that because the record supports such a sentence, we should affirm under a de novo review.

When an accused challenges the length of a sentence or manner of service, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the *Bise* standard to "questions related to probation or any other alternative sentence"). The *Bise* standard of review also applies to consecutive sentencing determinations. *State v. Pollard*, 432 S.W.3d 851, 860-61 (Tenn. 2013). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001).

This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," a punishment sufficient "to prevent crime and promote respect for the law," and consideration of a defendant's "potential or lack of potential for . . . rehabilitation[.]" Tenn. Code Ann. § 40-35-102(1), (3), (5); *see Carter*, 254 S.W.3d at 343. Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of the categories in Tennessee Code Annotated section 40-35-115(b). "Any one of these grounds is a sufficient basis for the imposition of consecutive sentences." *Pollard*, 432 S.W.3d at 862 (citing *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013)). This court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the . . . grounds listed in Tennessee Code Annotated section 40-35-115(b)." *Id.* at 861. "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.* at 862 (citing Tenn. R. Crim. P. 32(c)(1); *Bise*, 380 S.W.3d at 705). When imposing consecutive sentences, the court must still consider the general sentencing principles that each sentence imposed shall be "justly deserved in relation to the seriousness of the offense," "no greater than that deserved for the offense committed," and "the least severe measure necessary to achieve the purposes for which the

sentence is imposed." Tenn. Code Ann. §§ 40-35-102(1), -103(2), -103(4); *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).

When the trial court fails to provide adequate reasons on the record for imposing consecutive sentences, this court "should neither presume that the consecutive sentences are reasonable nor defer to the trial court's exercise of its discretionary authority." *Pollard*, 432 S.W.3d at 863-64. Instead, this court has two options: "(1) conduct a de novo review to determine whether there is an adequate basis for imposing consecutive sentences; or (2) remand for the trial court to consider the requisite factors in determining whether to impose consecutive sentences." *Id.* at 864 (citing *Bise*, 380 S.W.3d at 705 & n.41).

Here, the trial court imposed consecutive sentences without adequate explanation. While it cited deterrence to the Defendant and the community in support of its decision, deterrence is not an enumerated ground to support consecutive sentences under Tennessee Code Annotated section 40-35-115(b). However, we agree with the State that the record is adequate for our de novo review. *Pollard*, 432 S.W.3d at 864; *see, e.g.*, *State v. Hogbin*, No. M2012-00945-CCA-R3-CD, 2013 WL 1197728, at *7-8 (Tenn. Crim. App. Mar. 26, 2013) (employing a de novo review when similar aggravating circumstances were present).

As relevant to this case, consecutive sentences may be ordered when

[t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims[.]

Tenn. Code Ann. § 40-35-115(b)(5). "However, not all of the aggravating circumstances listed in section 40-35-115(b)(5) 'must be present to support the imposition of consecutive sentencing.'" *State v. Doane*, 393 S.W.3d 721, 738 (Tenn. Crim. App. 2011) (quoting *State v. Powers,* No. E2001-02363-CCA-R3-CD, 2002 WL 31387308, at *5 n.4 (Tenn. Crim. App. Oct. 23, 2002)). Consecutive sentences may be imposed under this section "even when one factor militates against them if the other aggravating circumstances have been established and carry sufficient weight." *Id*. (citation omitted). We agree with the State that the circumstances in this case support the application of this subsection to impose consecutive sentences.

The Defendant was convicted of two counts of rape of a child and one count of aggravated sexual battery. The proof at trial established that the Defendant was the

victim's biological grandfather, and while the victim lived with him, the Defendant violated this relationship of trust in a "repulsive way" by sexually abusing the victim on multiple occasions including digitally penetrating her vagina, holding a vibrating object to her vagina, touching her "butt" and "vagina," trying to touch her breasts, and making inappropriate comments of a sexual nature. As a result, the victim began dressing modestly, became depressed and withdrawn, and became disinterested in school to the point where she no longer wanted to attend. She ultimately disclosed the abuse in an effort to learn whether the Defendant's conduct was "normal," so that she might protect her younger siblings. The victim cried in her mother's arms after discussing the abuse with her. Based upon these aggravated circumstances, we determine upon our de novo review that the evidence supports the imposition of consecutive sentences. *See State v. Turner*, No. W2007-01364-CCA-R3-CD, 2008 WL 2019459, at *6-7 (Tenn. Crim. App. May 8, 2008) (affirming consecutive sentences by finding, *inter alia*, that one of the victims had reported feeling ashamed and sad and whose performance in school had suffered as a result of the sexual abuse); *State v. Miller*, No. M2004-00707-CCA-R3-CD, 2005 WL 1220236, at *7-8 (Tenn. Crim. App. May 20, 2005) (affirming consecutive sentences when the defendant, who was the victim's father, perpetrated multiple acts of sexual abuse against the victim for a period of three months).

Additionally, the Defendant argues that, as he was sixty-three years old at the time of sentencing, the seventy-four-year sentence was greater than deserved and was not the least severe measure necessary to achieve the purpose for which the sentence was imposed. However, a defendant's age should not "necessarily limit the total effective length of the defendant's sentence[,]" as a sentence is not excessive merely because it extends beyond a defendant's expected lifespan. *State v. Perry*, No. E2015-01227-CCA-R3-CD, 2016 WL 2901817, at *4 (Tenn. Crim. App. May 13, 2016) (citations omitted). Furthermore, this court has previously affirmed lengthy aggregate sentences for the perpetration of sexual offenses. *Id.* (citing *State v. Hayes*, No. M2002-01331-CCA-R3-CD, 2004 WL 1778478, at *9 (Tenn. Crim. App. Aug. 9, 2004)). Given the egregious nature of the Defendant's offenses based on his abuse of trust with the victim, the Defendant is not entitled to relief on this issue. *See, e.g.*, *State v. Gouge*, No. E2022-01001-CCA-R3-CD, 2023 WL 3454702, at *8-10 (Tenn. Crim. App. May 15, 2023) (affirming a ninety-nine-year sentence for the defendant who was found guilty of five offenses of sexual abuse against the minor victim who considered the defendant her "de-facto father figure"), *perm. app. denied* (Tenn. Sept. 11, 2023); *Perry*, 2016 WL 2901817, at *4 (affirming an effective sentence of 106 years for the defendant's sexual abuse of the minor victim).

### III. CONCLUSION

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE